UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARIANNE DILLEY,

        Plaintiff,

        v.

METROPOLITAN LIFE INSURANCE COMPANY, et al.,

        Defendants.
_____/

No. C 07-1831 PJH

**ORDER GRANTING DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

        Defendants' motion for a protective order came on for hearing before this court on March 18, 2009.  Plaintiff Marianne Dilley appeared by her counsel Lissa A. Martinez, and defendants Metropolitan Life Insurance Company and Bank of America Long Term Disability Benefits Plan appeared by their counsel Rebecca A. Hull.  Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court GRANTS the motion as follows and for the reasons stated at the hearing.

        Plaintiff was employed by Bank of America, and was a participant in defendant Bank of America Long Term Disability Benefits Plan ("the Plan").  Defendant Metropolitan Life Insurance Company ("MetLife") is the insurer and the administrator of the Plan.  Plaintiff applied for long-term disability in 2004.  MetLife paid benefits for two months, but then found that plaintiff was able to return to work, based in part on a review of plaintiff's records conducted by an independent physician consultant affiliated with Elite Physicians Ltd. (a subsidiary of Network Medical Review Company Ltd. or "NMR").

Plaintiff filed this action on April 2, 2007, asserting that MetLife had wrongfully denied her claim for disability benefits.  Under the terms of the Plan, MetLife has discretion to interpret the terms of the Plan and to determine eligibility of Plan participants.  However, because of its dual role as insurer and administrator, MetLife acts under a structural conflict of interest.  See Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955 (9th Cir. 2006). Following a hearing on December 5, 2007, the court issued an order on December 11, 2007 granting plaintiff's motion for limited discovery into MetLife's conflict of interest and its impact on the handling of her claim.

Defendants now seek an order relieving them of any further obligation of responding to plaintiff's Interrogatory No. 5.  The Interrogatory requests defendants, for each year from 2002 to the present, to "state the number of claims denied by METLIFE based, in whole or in part, upon medical record reviews by NMR."  The date range was subsequently limited to the years 2005 through 2007.

Under Federal Rule of Civil Procedure 26, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery . . . [and] forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(A), (D).

The court must limit discovery if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit," considering certain factors including "the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."  Id. 26(b)(2)(C).  In addition, "[a] party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost," and may be entitled to a protective order limiting such discovery unless "the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C)."  Id. 26(b)(2)(B).

In attempting to respond to Interrogatory No. 5, MetLife has provided the following information: During the period 2005 through 2007, a combined total of more than 1.1 million

claims were submitted to MetLife and administrator for numerous long-term and short-term employee benefit disability plans. Of the more than 1.1 million claims, approximately 80% (or more than 914,000) were approved and paid for some period of time, and approximately 19.1% (or 217,444) were never paid. During the same period, MetLife referred a total of 9,056 files (0.8% of the total 1.1 million claims received) to NMR for review by appropriate specialists. Of those 9,056 claims, 1,710 (18%) were currently being paid; 4,598 (50%) had been paid for a period of time but were discontinued before the NMR referral date; and 1,248 (13%) had been paid for some period of time but were discontinued after the NMR referral date.

Beyond this, MetLife established that the remaining information sought by plaintiff could not be extracted without substantial difficulty and expense, because MetLife has no ability to query its electronic database in a manner that would capture such information. In particular, MetLife has no ability to determine, from its database, whether a report received from an independent physician consultant through a referral to NMR provided a basis for the denial or termination of a claim.

At the hearing, the court engaged plaintiff's counsel in a discussion of the relevance of the requested information to the issues at stake in the action. Plaintiff's counsel argued that the requested statistical information (the number of claims denied by METLIFE based upon medical record reviews by NMR) could be used to establish that MetLife's structural conflict impacted its decision to deny plaintiff's claim, and if so, that the court would then be required, under United States Supreme Court and Ninth Circuit authority, to give less deference to MetLife's decision, or to view the decision with more skepticism.

The court finds that MetLife has established that because of the relative inaccessibility of the information sought by plaintiff in Interrogatory No. 5, responding to the request would be overly burdensome. The court finds further that the statistical information sought by plaintiff would not show that MetLife's conflict impacted its decision to deny plaintiff's claim. Details of the number of claims denied based on a medical records review by NMR would be meaningless unless a finding could be made that MetLife had wrongly

3

denied those claims. Because none of those cases are before the court, the court is not in a position to make such a finding.

Accordingly, the court finds that the significance of the discovery to the issues in the present case is substantially outweighed by the burden on MetLife were it compelled to respond to Interrogatory No. 5. The motion is therefore GRANTED.

**IT IS SO ORDERED.**

Dated: March 19, 2009

PHYLLIS J. HAMILTON
United States District Judge